CASE 33.—PROCEEDING BY THE CITY OF LOUISVILLE AGAINST THE NEW GALT HOUSE CO. TO COLLECT A PENALTY FOR NON-PAYMENT OF A LICENSE TAX.—June 20.

# New Galt House Co. v. City of Louisville

129   341
e131  548

Appeal from Jefferson Circuit Court (Criminal Division).

ALLEN W. KINNEY, Special Judge.

Defendant fined, and appeals.—Reversed.

Innkeepers—Licenses—"Restaurants"—European Plan.—A city ordinance imposed an annual license tax on hotels and also on restaurants, and defined "restaurants" as "every place where food or refreshments are prepared for casual visitors and sold for consumption therein." Held, that a hotel con-

ducted on the "European" plan, with an eating place in connection, could not be charged with a restaurant license, since the furnishing of food to casual visitors is only an incident to the business of a hotel, whether it be run on the "American" or "European" plan.

HENRY W. SANDERS for appellant.

## POINTS.

1. The power delegated to a municipality to tax should be strictly construed.

2. The taxing power delegated to the city of Louisville does not authorize it to levy a license tax upon the constituent elements of an occupation or business, nor by its own declaration to segregate the essential elements of a business for the purpose of placing a license tax upon each.

3. The New Galt House Company is engaged solely in the occupation of hotel keeper. Its eating room is purely an essential element of its occupation or business as a hotel keeper.

4. The hotel license issued to the New Galt House Company by the city of Louisville covers every element of its business as a hotel keeper and it cannot, therefore, be compelled to pay an additional license upon any one of the essential elements of that business.

## AUTHORITIES.

Southern Express Co. v. R. M. Rose Co., 124 Ga., 581; 5 L. R. A., (N. S.) 619; 25 A. & E. Ency. of Law, 580; Kentucky Statutes, sections 2980 and 3011; General Ordinance City of Louisville (1907) 461-463; Hewin v. Atlanta, 121 Ga., 723; 67 L. R. A., 795; Canova v. Williams, 41 Fla., 509; 27 So., 30; Savannah v. Dehoney, 53 Ga., 33; Vosse v. Memphis, 9 Lea, 294; Hotelling v. Chicago, 66 Ill. App., 290; Tuscaloose v. Holczstein, 134 Ala., 636; 32 So., 1007;; Commonwealth v. Shoppenhorst, 105 Ky., 259; State v. Hall, 73 N. C., 252; Note 17, 25 Cyc. L. & P., 614; Cromwell v. Stephens, 2 Daly 15; People v. Jones, 54 Barb (N. Y.) 311; Kelly v. New York Excise Com'rs, 54 How. Prac., 327; 22 Cyc. Law & Procedure, 1071-1076; Bennett v. Melor, 2 Rev. Rep., 593; Overstreet v. Moser, 88 Mo. Apps., 73; Hancock v. Renn, 46 Am. Rep., 1112; Krohn v. Sweeney, 2 Daly, 200 (N. Y.); Carpenter v. Taylor, 1 Hilt, 195 (N. Y.); Meacham v. Galloway, 46 L. R. A., 319.

New Galt House Co. v. City of Louisville.

A. E. RICHARDS and ELMER C. UNDERWOOD, attorneys
for city of Louisville.

Without quoting from the transcript of testimony we assert
that it establishes the following facts:

1. That the New Galt House Company is conducting a tavern
or hotel in that it undertakes to provide lodging, food and drink
for travelers although a guest may or may not procure his meals
at the hotel, just as he sees fit.

. 2. That the New Galt House Company in addition to its hotel
business operates a restaurant or eating-house for supplying meals
to mere casual visitors. It displays a sign at its desk in the
lobby to the effect that a restaurant may be found in a certain
portion of the building, and at this particular portion of the build-
ing there is displayed a restaurant sign. Meals are served con-
stantly to any and all persons from 6 a. m. till 12 o'clock mid-
night, regardless of whether these persons be lodgers at the hotel
or mere casual visitors and in addition the New Galt House
Company caters to the general restaurant trade and makes every
effort to obtain it.

OPINION OF THE COURT BY JUDGE BARKER—Revers-
ing.

The appellant, the New Galt House Company, and
its predecessors, have for many years conducted a
hotel in the city of Louisville known as the "Galt
House." Formerly this hotel was conducted on what
is called the "American plan;" that is, meals were
provided at regular hours for its patrons, who paid
a stipulated sum per day, which included both meals
and room rent. Some time prior to this litigation the
management of the hotel changed the manner of con-
ducting it from the "American plan" to what is
known as the "European plan;" the difference being
simply in the fact that under the latter the guests pat-
ronize the hotel table or not, as they please, and, when
they do so, pay for what they order. The proprietors
of the hotel in question have always paid a hotel

license; but the city, after the change in the management above mentioned, conceiving that the appellant was conducting and operating a restaurant in addition to the hotel, demanded an additional license for the operation of the former. This being refused, an ordinance warrant was sued out, with the result that the appellant was fined $60 in the circuit court; and of this judgment it now complains.

There is no contrariety whatever about the facts of the case. The appellant has paid the hotel license of $150 for the year 1907. It provides no table or meals for its guests other than the restaurant in question, and any person, whether he be a lodger or not, may visit the restaurant and obtain such food as he desires upon payment of the price charged .therefor; and undoubtedly it is true that many persons who do not lodge in the hotel patronize the restaurant. The question is, therefore, whether or not the change in the management of the hotel from the ''American plan'' to the ''European plan'' authorizes the city to charge a restaurant license in addition to the hotel license. Section 46 of the license ordinance of the city of Louisville relating to the subject in hand, is as follows: ''Every person, firm or corporation operating or conducting a tavern, hotel,  *  *  *  in the city of Louisville shall pay a yearly license as follows: First-class. One having one hundred and fifty rooms or over, one hundred and fifty dollars per year. (Remainder of grading omitted).'' Section 37 of the ordinance is as follows: ''Every place where food or refreshments of any kind—not including spirituous, vinous or malt liquors—are prepared for casual visitors, and sold for consumption therein, shall be deemed a restaurant or eating house, and every person, firm or corporation conducting or operating any

such place shall pay a license as follows: All restaurants or eating houses wherein the yearly sales amount to the sum of fifty thousand dollars and over, the license shall be one hundred and fifty dollars per year. (Remainder of grading omitted.)''

Undoubtedly, if the city's contention is upheld, the appellant must pay two licenses of $150 each. It may be admitted that if the restaurant, as conducted by appellant, were separate from the hotel, the owner would be required to pay a restaurant license therefor; but the question remains whether or not the mere change from the ''American plan'' to the ''European plan'' authorizes the city to impose upon the appellant two licenses of $150 each—one for keeping a hotel and the other for operating a restaurant. And assuming that this may be done, are we authorized to conclude that such was the intention of the municipality when the ordinance above set forth was enacted? We do not think such a deduction is maintainable. It is a matter of common knewledge that hotels or taverns, whether conducted upon the ''American'' or European'' plan, permit persons other than the regular guests to purchase meals whenever desired. The main business, of course, is the conducting of the hotel or tavern. The furnishing of meals to persons other than the regular guests is a mere incident to the business. This incidental business does not change the nature of the regular business, or impose upon the proprietor a double license. It is immaterial whether the hotel is conducted on the ''American'' or ''European'' plan. Hotels as they are ordinarily conducted (perhaps universally so) furnish both lodging and food to their patrons. Indeed, a hotel could hardly be conducted successfully if the proprietor did not afford the guests an opportunity to obtain food within

the building. Some men might readily lodge in a hotel and secure their meals at another place; but the general traveling public, including women and children, could not do this, and we may assume that no hotel could be successfully conducted which did not provide food for its guests. If the appellant operated on the "American plan," and, in addition, conducted a restaurant in connection with its business, there would be some ground to claim that a double license was due. But it must be assumed that, when the city imposes upon appellant the payment of a license of $150 for conducting a hotel, it intends that it shall have the privilege ordinarily included in the business of the hotel; and certainly, if this was not the intention, it was incumbent upon the city to declare a contrary intention in clear and unmistakable language. If appellant is required to pay a restaurant license of $150 per annum, then it will have paid twice the sum that any other first-class hotel in the city of Louisville pays which simply conducts a hotel on the "American plan." We do not feel authorized to assume that the city intended to segregate the different parts of the business of keeping a hotel, and charge a separate license for each.

The conclusion we have reached—that the city did not intend by the ordinance under discussion to impose upon the proprietor of a hotel, who had paid the regular license, the additional burden of a restaurant license, when that constitutes the only means adopted for furnishing his guests with food—renders it unnecessary that we should discuss or decide whether or not, under the charter, the city has the power to separate the different parts of the hotel business and charge a license for each; and therefore this question is not decided. We simply hold that, putting a reason-

able and just construction upon the ordinance under consideration, the appellant is not required to pay the additional license under the facts as developed in this record.

Judgment reversed, with directions to dismiss the warrant.